334　　　　　　　FIRST DEPARTMENT,

People ex rel. Murphy v. Board of Education of New York.

PEOPLE *ex rel.* MURPHY V. BOARD OF EDUCATION OF NEW YORK.

*New York city —Public schools — teachers in not public officers — removal of teachers — power of trustees — appeal — Jurisdiction — of court to reinstate teacher.*

The teachers employed in the public schools of New York city do not hold a public office, but are mere employees of the trustees; but the manner of employing and removing them is regulated by statute.

By Laws 1864, chap. 351, § 12, it is provided that a majority in number of the trustees may remove a teacher, provided the removal be approved in writing by a majority of the inspectors; but the teacher may appeal to the board of education, which board, after hearing the answers of the trustees, may reinstate the teacher. *Held,* that the approval of the inspectors need not be given at the meeting of the board of trustees, when the removal is ordered; that the hearing upon appeal to the board of education is not necessarily in the nature of a judicial trial; and that a refusal by the board to require the statements before them on appeal to be made under oath, was not a ground for interference by the court.

Upon such an appeal from an order removing a teacher for incompetence, the teacher offered to prove that her incompetence was due in part to the incompetence of the principal of the school. *Held,* that a refusal by the board of education to investigate that question, was proper.

*Held,* also, that there was no power vested in the court to reinstate a teacher by a reversal of the action of the board of education.

CERTIORARI, upon the relation of Catherine Murphy, to review the proceedings of the board of education of the city of New York upon appeal from an order of trustees removing the relator as an assistant teacher in a public school. The facts sufficiently appear in the opinions.

*William H. Rooney,* for relator.

*E. Delafield Smith,* for respondent.

DAVIS, P. J.— The relator was an assistant teacher in the male department of Grammar School No. 21, in the Fourteenth ward of the city of New York. On the 29th of January, 1874, the board of trustees of common schools of the Fourteenth ward, at a meeting held by them passed the following resolution:

"*Resolved,* That Miss Catherine Murphy, sixth assistant teacher in male department of Grammar School No. 21, in accordance with

the recommendation of the city superintendent, be and she is hereby removed for incompetency."

On the 30th of January a copy of this resolution was served on the relator, and another copy was filed with the clerk of the board of education. On the 4th day of February the relator appealed to the board of education. On the 6th of February a majority of the inspectors of the district approved the removal of the relator, in writing, by signing a certificate to that effect, at the bottom of the copy of the resolution of the trustees then on file with the board of education.

The board of education, pursuant to section 45 of the rules and regulations of said board, referred the appeal to the committee on teachers.

The relator, pursuant to notice, appeared before the said committee on the 10th of February, 1874, in person, and by counsel, and filed with the committee a series of objections to the proceedings of the trustees and inspectors, and to the regularity of her removal, upon which she insisted that, "the removal for all the purposes of this appeal was and is irregular, and the appeal must therefore be sustained." The committee overruled the objections and adjourned the hearing of the appeal to the 17th of February. On the 17th of February the relator again appeared, and presented and read to the committee a paper in the form of an affidavit, to which she offered to make oath, but was informed by the committee that it was unnecessary to do so. The hearing was then further adjourned to the 24th of February, at which time the relator appeared. The committee proceeded to hear the statements of the assistant superintendent, G. J. Harrison, an inspector of the district, Mr. Hunter, and one of the trustees of the ward, Mr. Smith, and of the relator on her own behalf.

The relator requested and insisted that the statements should be on oath, and the persons named should be sworn as witnesses. The committee refused to require the statements to be on oath. The relator also offered to prove the facts alleged in her statements, presented to the committee on its first meeting, the substance of which was that the principal of said male department "was incompetent both as a principal and teacher," and that her incompetency was due to the incompetency and neglect of the principal. The committee refused to receive such proof, or to enter upon any

investigation of the allegations against the principal or other persons named in the statement.

The committee reported to the board a statement setting forth their proceedings with a resolution approving the action of the trustees in removing the relator, together with a resolution requesting the trustees, to transfer her to some position in one of the primary departments. On the 4th of March, 1874, the board of education disposed, finally of the appeal by the adoption of the report of the committee and the resolutions therein contained.

The teachers employed in the public schools of the city do not hold a public office. They are simply employees of the trustees of the schools in whose service they are engaged, but the manner of employing and of removing them is regulated to some extent by statute. The 12th section of the act relative to common schools in the city of New York, passed April 25, 1864, (Laws 1864, chap. 351), provides that :

"The board of trustees for the ward, by the vote of the majority of the whole number of trustees in office, may also remove teachers employed therein, other than principals and vice principals, and may also remove janitors, provided the removal is approved in writing by a majority of the inspectors of the district; and provided further that any teacher so removed shall have a right to appeal to the board of education under such rules as it may prescribe; and the said board, shall have power after hearing the answers of the trustees to reinstate the teacher." The number of trustees in each ward is five; and the number of inspectors in each district is three. (Laws of 1873, chap. 113, §§ 6, 7.)

The papers show that the relator was removed at a stated meeting of the board of trustees, four trustees being present, and that the resolution of removal was unanimously adopted, and it appears that two of the three inspectors afterward approved such removal in writing.

The action of these officers, respectively, was strictly regular under the statute. It is not necessary that the approval of the inspectors should be given at the meeting of the board of trustees, nor is it required to precede the action of the latter body. It is enough that it is given in writing after the board have acted, and its indorsement in this case, upon the resolution, filed with the board of education was, we think, a proper and effective mode of expressing the approval. The relator had taken her appeal before the approval

of her removal by the inspectors. That might have been a proper ground for dismissing the appeal as prematurely taken, but was certainly no good reason for reversing the proceedings appealed from.

Both parties having gone on with the appeal as though regularly taken, we are not at liberty to consider any question of regularity relating to the time or form of the appeal. The more material points made are first that the statements of the several parties were heard by the committee without oath, and that the committee over-ruled the request of the relator that the witnesses be sworn. The statute makes no provision for a judicial trial on the sworn testimony of witnesses. The manner of investigating the appeal is left wholly to the sound discretion of the board of education. All that is said in the act on the subject is that "the teacher so removed, shall have a right of appeal to the board of education, subject to such rules as it may prescribe; and the board shall have power after hearing the answers of the trustees, to reinstate the teacher.

This supervisory power is not necessarily in the nature of a judicial trial of issues of fact. The substantial duty of the board is to see that injustice has not been done to the teacher by the trustees, and that the removal has not been made upon improper or inadequate grounds.

The delicate nature of the duty devolved upon the trustees, to see to it that unfit or incompetent persons are not put or kept in charge of the children who attend the common schools, forbids the idea of a trial with the formality and strictness that belong to courts. It is only necessary to suggest that they must often act upon moral conviction, rather than established facts; and upon evidence of unfitness, physical, mental, or moral, that would not in courts be such proof as would justify a verdict of guilt of specific offenses or immoralities.

Before the act of 1864, above quoted, their power over the subject of removing teachers, was subject to no restraint or review, except that which the common law imposes upon all contracts between the employer and the employed. *Gildersleeve* v. *Board of Education*, 17 Abb. 207; *People* v. *School Officers*, 18 Abb. 170.

The law has only limited this power by specifying that it shall be exercised by a vote of the majority of the whole number of the trustees in office, and that the removal shall receive the approval in writing, of a majority of the inspectors of the district. Laws, 1864, chap. 351, § 12.

Where these requirements concur, the power of removal is as complete as ever, with the exception that the teacher may appeal to the board of education and be reinstated, if that body "*after hearing the answers of the trustees*," are not satisfied that the removal was proper.

To convert these proceedings into machinery for the formal trial of issuable questions of fact, would not, we think, be carrying out the policy or intent of the law, and would be disastrous to the well being and good administration of the schools.

The second point in substance is, that the committee refused to take testimony in relation to the competency of the principal of the department, in which the relator was an assistant teacher. This refusal was altogether right. No such question was properly brought before the board by the appeal. The relator could not exculpate herself by inculpating another, nor excuse the incompetency (which the offer on her part seemed to admit) by showing that it was caused by the alleged incompetency of her superior.

The fact, if established, would only have shown that both ought to have been removed, and not that she ought to be reinstated.

The certiorari should be dismissed with costs.

LAWRENCE, J. Assuming that this court has the power on a writ of certiorari to review the proceedings and decision of the board of education, in relation to the removal of teachers in the common schools in the city of New York, I have failed to discover, on examining the case presented, any error which would warrant us in disturbing the action taken by that board.

Prior to the year 1864, the power to contract with and employ teachers in the schools, was vested in the trustees of the several wards, under such general rules and regulations as the board of education might adopt. Laws 1851, chap. 386, § 10; Laws 1854, chap. 101. In the case of *Gildersleeve* v. *Board of Education*, 17 Abb. 207, the general term of the court of common pleas held, Chief Justice DALY delivering the opinion, that the power to employ teachers necessarily implied the right to remove them.

And this court held in the case of *People ex rel. McHugh* v. *School Officers*, 18 Abb. 165, that under the law, as it then stood, the board of education had no appellate jurisdiction over the trustees of common schools, in the exercise of their power to dismiss teachers of the ward schools. It appeared in that case that the board of edu-

cation had passed a by-law giving to a dismissed teacher the right to appeal to the board of education, when removed by the trustees. The court held that the right to prescribe general rules and regulations for the trustees, in employing teachers, did not give to the board of education authority to supervise the action of the trustees in appointing or removing teachers.

Just after the last-cited case had been decided, the legislature passed an act by which it was provided that teachers, others than principals and vice-principals, should be appointed by a majority of the "trustees, and that the board of trustees for the ward, by the vote of the majority of the whole number of trustees in office, may remove teachers employed therein, other than principals or vice-principals, and may also remove janitors, provided the removal is approved in writing by a majority of the inspectors of the district, and provided, further, that any teacher so removed shall have a right to appeal to the board of education, *under such rules as it may prescribe; and the said board shall have power, after hearing the answers of the trustees, to reinstate the teacher.*" Laws of 1864, § 12.

This act was undoubtedly passed to remedy the defect which the case of *People ex rel. McHugh* v. *School Officers,* above referred to, had shown existed in the laws relating to common schools in the city of New York, and was designed to give to the board of education that supervisory power, in the matter of the removal of teachers, which that case had settled did not reside in the board of education.

But it will be observed that the power, which is by the act of 1864 vested in the board of education, is discretionary. That board has the power, on appeal, to reinstate a teacher, but there is no obligation on the part of the board of education to make such reinstatement.

It appears by the case that the board of education, pursuant to the power conferred by the act of 1864, adopted the following rule in relation to the hearing of appeals taken by teachers:

"§ 45. Upon the dismissal of, or application for, the dismissal of a teacher, the board of trustees shall file with the clerk of this board a copy of the resolution directing the same, and notify the teacher in writing of the cause of such application. Said teacher shall have the right to appeal to this board within ten days after the service of the notice aforesaid, and said appeal shall be immediately referred

to the committee on teachers, to examine into the facts and circumstances of the case, and report to this board. Pending the consideration of such appeal, no salary shall be paid to any teacher acting in the place and stead of such appellant, without first obtaining the consent of this board, nor shall any appointment to the position occupied by the appellant be acknowledged by this board. If this board shall decide that there is no good cause for such dismissal, then said teacher shall be entitled to the position and salary he or she had at the time of such application, with pay."

The following rule was also adopted:

" § 64. No teacher or janitor shall be appointed or removed, nor shall any work or supply be ordered or procured; nor shall any pay-roll, or bill, or other claim be passed in any ward, except at a meeting of the board of trustees for the ward; and the making of every appointment or removal, and the passing of every pay-roll, bill, or other claim, shall be certified to have taken place at a meeting of the board of trustees for the ward, at which a quorum was present, and the certificate shall be signed by the presiding trustee and the recording officer of the board, or else by a majority of the trusteees."

It appears by the return to the writ, that on January 29, 1874, the board of trustees of the ward in which the school was situated passed a resolution removing the relator for incompetency, and that, on the 30th day of January following a certificate of such removal, containing a copy of the said resolution, was filed with the clerk of the board of education, and by said certificate it also appeared that the resolution was unanimously adopted at a *stated meeting* of the board of trustees of the fourteenth ward. A copy of this resolution, with a notice that the same was unanimously adopted at a meeting of the board of trustees, held on the 29th of January, was, on the 30th of January, 1874, served on the relator, which notice was signed by three of the trustees of the ward, the president of the board being one of those signing. The certificate filed with the clerk of the board of education was signed by four of the trustees, including the president of the board. There were at that time five trustees in each ward. Laws 1864, chap. 351.

On the 4th of February, 1874, the relator appealed to the board of education, and on the 6th of February two of the three inspectors of the second school district approved of the action of the trustees in removing the relator, by certifying in writing to that

effect. This approval was made and signed at the hall of the board of education.

The appeal taken by the relator was referred by the board of education to the committee on teachers, pursuant to the rule aforesaid. The relator and the trustees, or some of them, appeared before said committee, by whom an examination of the case was had, and, after considering said appeal, the committee sustained the action of the trustees, and, on the 4th of March, 1874, made a report to the board of education in favor of dismissing the appeal, which report was subsequently adopted by the board of education.

The relator's counsel has argued before us that all the proceedings for the removal of the relator were irregular and void.

I. It is contended that the resolution removing states that she was removed for incompetency, and that no proof of such incompetency had been laid before the board of trustees at the time the resolution of removal was adopted.

The answer to this point seems to me to be that the power of removal was vested in the trustees, subject only to approval by the inspectors, and, that, if they were satisfied as to the relator's incompetency, with or without evidence, their power to remove the relator therefor cannot be questioned.

II. It is objected that the sole basis for the relator's removal was the recommendation of the city superintendent to the board of trustees, and that the board was not authorized to act on such recommendation.

As the trustees were authorized to remove it is immaterial whether their action proceeded upon their personal knowledge or upon communications made to them by other persons.

III. It is further objected that it does not appear affirmatively that the removal was effected by the vote of the majority of the whole number of trustees, as required by the act of 1864.

The reply to this point is, that it appears that the resolution was unanimously adopted at a *stated meeting*, and that the certificate is signed by a *majority* of the trustees. In *Gildersleeves* v. *Board of Education, supra*, it was held that the trustees are to be deemed to have notice of a *stated meeting*, held pursuant to the by-laws.

As it nowhere appears that any one of the trustees was absent from the meeting, and, as more than a majority of the trustees certify that the resolution of removal was *unanimously adopted* at a stated meeting, the presumption is that all the trustees were

present when the resolution was adopted. At all events the certificate is presumptive evidence that a quorum was present.

IV. The approval of the inspectors was regular. There were by law three inspectors in this school district. Laws 1864, chap. 351. I find nothing in the statute which requires the inspectors to give their approval to the removal of a teacher, at a meeting of the trustees, or simultaneously therewith. Even if such approval should, by law, have been given before the relator appealed, the point cannot avail the relator because it proves only that the relator's appeal was premature. The cases cited by the relator's counsel do not apply to this case, inasmuch as they are cases in which the power to remove was vested in two bodies, designed by law to meet either in joint session or simultaneously. The act of 1864 contains no such requirement. The inspectors are not a board, and do not act as a board, but, as individuals, clothed with certain official powers.

V. All the points made by the relator's counsel in relation to the course of procedure on the appeal to the board of education, and as to the refusal to examine witnesses under oath are in my judgment not well taken. The statute has not prescribed any particular mode of procedure on the part of the board of education, nor is there any requirement that witnesses shall be examined under oath. Laws 1864, chap. 351, § 12.

The by-law passed pursuant to the act of 1864, provides that the appeal shall be referred to the committee on teachers "to examine into the facts and circumstances of the case, and to report to this board." It also provides that "if the board *shall decide* that there is no good cause for such dismissal, then said teacher shall be entitled to the position and salary he or she had at the time of such application with pay." Here the committee on teachers made such examination, and reported their conclusion to the board of education by which board the report was adopted. The board of education instead of deciding that there was no good cause for the removal of the teacher by adopting the report of the committee affirmed that there was good cause therefor. I find no irregularity in that part of the case.

VI. While it is now settled in this State that upon a certiorari the court can examine into the proceedings of an inferior tribunal and even into the merits of the case, I do not understand that it has power to to overrule or nullify the judgment of the inferior

tribunal in a case where the judgment has been given in the exercise of a discretionary power.

In this case it will be observed that the act of 1864, has vested in the board of education a discretionary power upon the hearing of appeals from the action of the trustees in removing teachers. The board has power after hearing the answers of the trustees to reinstate a teacher. The exercise of such power is not obligatory or mandatory. It is discretionary or permissive after hearing the answers of the trustees. Laws 1864, chap. 351, § 12.

Now in this case the court is asked virtually to reinstate the teacher by the reversal of the action of the board of education and of the trustees. There is no such power vested in the court. *People, ex rel. Banks* v. *Board of Education*, 2 Abb. N. S. 185; *People* v. *Stilwell*, 19 N. Y. 532.

Upon a thorough examination of the whole case I am satisfied that this is not a case in which the court should interfere even if vested with the power so to do, and I am therefore of opinion that the writ should be quashed with costs to the respondents.

*Ordered accordingly.*